UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **EDCV 15-1090 JGB (KKx)** | Date | December 3, 2015 |
|---|---|---|---|
| Title | *Beaulieu Group, LLC v. Mike Bates* | | |

| Present: The Honorable | JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE |
|---|---|

| MAYNOR GALVEZ | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:** **Order (1) DENYING Plaintiff's Motion to Amend the First Amended Complaint (Doc. No. 29); and (2) DENYING Defendant's Motion for Judgment on the Pleadings (Doc. No. 28) (IN CHAMBERS)**

Before the Court is Plaintiff's Motion for Leave to File an Amended Complaint, and Defendant's Motion for Judgment on the Pleadings. The Court finds these matters appropriate for resolution without a hearing. See Fed. R. Civ. P. 78; L.R. 7-15. After reviewing and considering all papers filed in support of and in opposition to the motions, the Court DENIES Plaintiff's Motion for Leave to Amend and DENIES Defendant's Motion for Judgment on the Pleadings.

## I.  BACKGROUND

On June 4, 2015, Plaintiff Beaulieu Group, LLC ("Plaintiff" or "Beaulieu") filed a Complaint against Defendant Mike Bates ("Defendant" or "Bates"). (Doc. No. 1.) Plaintiff filed a First Amended Complaint on July 23, 2015. ("FAC," Doc. No. 18.) The FAC asserts six causes of action: (1) misappropriation of trade secrets; (2) unfair competition; (3) intentional interference with economic relationship and prospective economic advantage; (4) tortious interference with economic relationship and prospective economic advantage; (5) breach of written contract; and (6) breach of implied covenant of good faith and fair dealing. (Id.)

The FAC alleges the following facts. Plaintiff Beaulieu is a Georgia limited liability company that manufactures and sells a variety of flooring products throughout the world. (FAC ¶¶ 2-12, 17.) Beaulieu hires salespersons to develop relationships with Beaulieu's existing and potential customers and encourage increased business. (FAC ¶ 18.) Through the collective

knowledge and experiences of Beaulieu's personnel, the company has compiled detailed knowledge about its customers over the years. (FAC ¶ 21.)

On approximately April 12, 2010, Defendant began working as a divisional vice president of Beaulieu's western region and was responsible for supervising salespersons there. (FAC ¶¶ 22-24.) Shortly before beginning work, Defendant executed a Confidentiality and Non-Disclosure Agreement, (FAC ¶ 28), which is attached to the FAC as Exhibit A, ("Agreement," FAC, Ex. A). The Agreement provides that Defendant may not disclose confidential information that is not already in the public domain. (Agreement ¶¶ 1, 3.) The Agreement purports to apply during Defendant's employment with Beaulieu and for a period of two years after the last day of that employment. (Id. ¶ 2.) The Agreement also includes a Non-Interference and Non-Solicitation Obligations clause ("Paragraph 10"), which states as follows:

> You must not interfere with Beaulieu's relationships with its other employees or independent contractors, including Beaulieu's consultants. Furthermore, you agree that for one year after your Last Day, directly or indirectly, for yourself, or on behalf of or in conjunction with any person or legal entity, hire attempt to hire, or solicit any person then employed by or under contract with Beaulieu; however, this does not prohibit you from advertising for employees when that advertising is aimed at the general public. You agree to honor this promise regardless of the reason for leaving Beaulieu.

("Paragraph 10," Agreement ¶ 10.)

Beaulieu terminated Defendant on May 1, 2014. (FAC ¶ 25.) Defendant then began working for Mohawk Industries, Inc. ("Mohawk") in June 2014 as a vice president of sales in the west coast division. (FAC ¶ 32.) Like Beaulieu, Mohawk manufactures and sells a variety of flooring products throughout the world. (FAC ¶ 33.) Mohawk is the largest manufacturer and distributor of flooring products and is a direct competitor of Beaulieu. (Id.) Beaulieu alleges that Defendant improperly used and/or disclosed Beaulieu's trade secrets after his employment was terminated and he began working for Mohawk. (FAC ¶¶ 56-57.)

After commencing work with Mohawk, Defendant allegedly began recruiting Beaulieu's salespersons assigned to the western United States to work for Mohawk. (FAC ¶ 35.) Defendant has allegedly convinced at least eleven sales-related employees at Beaulieu to terminate their employment and instead work for Mohawk. (FAC ¶ 38.) Specifically, Defendant solicited Aaron Vandenberg, Chase Tait, Gregory Crumpton, Gerald Ohara, Robert Lynn, Nicholas Zell, Bradley Laws, Brian Johnson, Todd Graham, Patrick Garthwaite, and David Allendorf. (FAC ¶¶ 39-50.) As a result of these recruitments, Beaulieu asserts that it has lost a substantial amount of business and customer relationships in the western United States and incurred turnover costs related to replacing sales employees. (FAC ¶¶ 51-52.)

**A. Motion to Dismiss**

Defendant responded to the FAC by filing a Motion to Dismiss on August 6, 2015. (Doc. No. 19.) Defendant contended that Plaintiff failed to assert sufficient facts to support the first cause of action for misappropriation of trade secrets under the California Uniform Trade Secrets Act ("CUTSA"). Defendant sought dismissal of the second through sixth causes of action on the grounds that Paragraph 10 of the Agreement is unenforceable under California law.

The Court denied the Motion to Dismiss in full. ("Order," Doc. No. 42.) First, the Court found that Plaintiff had sufficiently stated a claim of trade secret misappropriation. (Id. at 3-4.) Second, the Court found that the no-hire provision in Paragraph 10 of the Agreement contravenes Section 16600 of the California Business & Professions Code and is therefore void and unenforceable. (Id. at 4-6.) Declining to rewrite or blue-pencil Paragraph 10 to remove the unenforceable provision, the Court determined that Paragraph 10 is void in its entirety, and that Plaintiff's claims could not be maintained to the extent they were premised on Defendant's breach of Paragraph 10. (Id. at 7-8.) Nevertheless, the Court denied the Motion, because Defendant failed to demonstrate that Plaintiff's second through sixth causes of action were entirely dependent on Paragraph 10. (Id. at 8.)

**B. The Instant Motion to Amend and Motion for Judgment on the Pleadings**

On October 30, 2015, Defendant filed a Motion for Judgment on the Pleadings as to Plaintiff's second through sixth causes of action. ("Mot. for J. on the Pleadings," Doc. No. 28.) Plaintiff filed an opposition on November 9, 2015. ("Pl.'s Opp'n," Doc. No. 31.) Defendant replied on November 16, 2015. ("Def.'s Reply," Doc. No. 32.)

On November 7, 2015, Plaintiff filed a Motion for Leave to Amend the First Amended Complaint, ("Mot. for Leave to Amend," Doc. No. 29), and attached the Proposed Second Amended Complaint ("PSAC," Doc. No. 29-2). Defendant opposed Plaintiff's Motion for Leave to Amend on November 16, 2015. ("Def.'s Opp'n," Doc. No. 33.) Plaintiff filed a Reply on November 23, 2015. ("Pl.'s Reply," Doc. No. 34.)

**II. DISCUSSION**

**A. Plaintiff's Motion for Leave to Amend the First Amended Complaint**

Federal Rule of Civil Procedure 15 provides that leave to amend "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). The Ninth Circuit has held that "'[t]his policy is to be applied with extreme liberality.'" Eminence Capital, L.L.C. v. Aspeon, Inc., 316 F.3d 1048, 1051 (9th Cir. 2003) (quoting Owens v. Kaiser Found. Health Plan, Inc., 244 F.3d 708, 712 (9th Cir. 2001)). Leave to amend is not automatic, however. The Ninth Circuit considers a motion for leave to amend under five factors: bad faith, undue delay, prejudice to the opposing party, the futility of amendment, and whether the plaintiff has previously amended his or her complaint. Nunes v. Ashcroft, 375 F.3d 805, 808 (9th Cir. 2004).

"The party opposing amendment bears the burden of showing prejudice, unfair delay, bad faith, or futility of amendment." United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO, CLC v. ConocoPhillips Co., 2009 WL 650730, at

*2 (C.D. Cal. Mar. 12, 2009) (citing Eminence Capital, 316 F.3d at 1052; DCD Programs, Ltd. v. Leighton, 833 F.2d 183, 186-87 (9th Cir. 1987)).

Under Rule 15(a)(2), amendment may be futile if the amended pleading would fail to state a claim upon which relief can be granted. See Blantz v. Cal. Dept. of Corr. & Rehab., 727 F.3d 917, 927 (9th Cir. 2013) (affirming denial without leave to amend because "the new allegations [plaintiff] envisions would merely be additional conclusory allegations of the sort that are insufficient under Iqbal and Twombly"); Sweany v. Ada County, Idaho, 119 F.3d 1385, 1393 (9th Cir. 1997) (explaining futility exists "only if no set of facts can be proved under which the amendment to the pleadings that would constitute a valid and sufficient claim"); see generally J. Moore, Moore's Federal Practice ¶ 15.08[4] (2d ed. 1974) (proper test to be applied when determining the legal sufficiency of a proposed amendment is identical to the one used when considering the sufficiency of a pleading challenged under Rule 12(b)(6)).

Plaintiff seeks to amend the FAC with additional allegations that purportedly prove the Agreement was not a contract of adhesion. Plaintiff contends that the proposed amendments clarify the circumstances under which Defendant signed the Agreement, and that "[t]his clarification is important because the Court declined to blue-pencil the non-solicitation provision of the Agreement due to public policy concerns arising from the Court's belief that the Agreement was a contract of adhesion." (Pl.'s Mot. at 7.) Based on these new allegations, Plaintiff argues that the Court should reconsider its decision holding that Paragraph 10 is void and unenforceable in its entirety. Plaintiff also seeks to add a jury trial demand.

The Court finds the proposed amendments would be futile and that Plaintiff is merely attempting to relitigate the Court's prior decision in this case. Plaintiff misconstrues the Court's decision to decline to blue-pencil Paragraph 10 of the Agreement. The Court's decision did not rest on a determination that the Agreement at issue was a contract of adhesion. Rather, the Court found that the policy rationale for declining to blue-pencil an unlawful contractual provision is "particularly convincing" in the context of employment contracts, which an employee must sign as a condition of employment. Id. (emphasis added). In so holding, the Court looked to the analogous context of noncompetition agreements and adopted the reasoning of the California Court of Appeal in Kolani v. Gluska, 64 Cal. 4th 402 (Cal. Ct. App. 1998). The Kolani Court declined to rewrite a broad covenant not to compete to make it conform to Section 16600, because it would be improper to reform the clause "for the purpose of saving an illegal contract." Id. at 406. The Kolani Court reasoned that "the policy [of Section 16600] would be undermined" if the court blue-penciled the non-competition clause out of the contract:

> Employers could insert broad, facially illegal covenants not to compete in their employment contracts. Many, perhaps most, employees would honor these clauses without consulting counsel or challenging the clause in court, thus directly undermining the statutory policy favoring competition. Employers would have no disincentive to use the broad, illegal clauses if permitted to retreat to a narrow, lawful construction in the event of litigation.

Id. at 407.

It is of no moment that Plaintiff now seeks to allege that Defendant was free to negotiate the terms of his employment contract. Signing the confidentiality agreement was "a condition of [Bates's] employment with Beaulieu," (FAC ¶ 28), and there is no indication in the proposed amendments that Defendant was actually able to negotiate its terms or even that he was informed that he was free to do so, (PSAC ¶ 31). Moreover, the public policy rationale outlined in Kolani and adopted by this Court that "many, perhaps most employees" would accept and honor the unlawful no-hire clause "without consulting counsel or challenging the clause in court" stands regardless of the specific circumstances surrounding the signing of this particular, unlawful contract.

Accordingly, because the Court finds Plaintiff's proposed amendments to the FAC would be futile, the Court DENIES Plaintiff's Motion for Leave to Amend the FAC.[1]

### B. Defendant's Motion for Judgment on the Pleadings

Judgment on the pleadings, pursuant to Federal Rule of Civil Procedure 12(c), is proper only where there is no unresolved issue of fact, and no question remains that the moving party is entitled to judgment as a matter of law. Torbet v. United Airlines, Inc., 298 F.3d 1087, 1089 (9th Cir. 2002), overruled on other grounds by United States v. Aukai, 497 F.3d 955 (9th Cir. 2007); Honey v. Distelrath, 195 F.3d 531, 532-33 (9th Cir. 1999). The standard applied on a Rule 12(c) motion is "functionally identical" to that applied on a motion to dismiss under 12(b)(6). Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc., 637 F.3d 1047, 1055 n.4 (9th Cir. 2011). "The standard articulated in Twombly and Iqbal applies equally to a motion for judgment on the pleadings." Perez v. Wells Fargo & Co., 75 F. Supp. 3d 1184, 1187 (N.D. Cal. 2014). Accordingly, the allegations of the non-moving party must be accepted as true, and all inferences reasonably drawn from those facts must be construed in the non-moving party's favor. Id. However, as on a motion to dismiss, conclusory allegations are insufficient to defeat a motion for judgment on the pleadings. Butler v. Resurgence Fin., LLC, 521 F. Supp. 2d 1093, 1095 (C.D. Cal. 2007) (citing In re Syntex Corp. Sec. Litig., 95 F.3d 922, 926 (9th Cir. 1996)).

### 1. Preemption by CUTSA

Defendant argues that Plaintiff's claims for unfair competition (second cause of action), intentional interference with economic relationship and prospective economic advantage (third cause of action), and tortious interference with economic relationship and prospective economic advantage (fourth cause of action) are based "solely on Plaintiff's contention that [Bates] misappropriated Beaulieu's confidential and proprietary information and trade secrets," and are therefore preempted by CUTSA.

---

[1] Plaintiff additionally seeks leave to amend the FAC to include a demand for a jury trial. Defendant does not oppose this request. Because the Court denies Plaintiff's Motion for Leave to Amend, Rules 38(b) and 39(b) of the Federal Rules of Civil Procedure provide the appropriate procedural vehicles for Plaintiff's request for a jury trial. The time to file a jury demand passed on October 15, 2015, fourteen days after Defendant filed its Answer to the FAC. See Fed. R. Civ. P. 38(b). If Plaintiff seeks a jury trial in this case, Plaintiff should file a motion for a jury trial pursuant to Rule 39(b). Fed. R. Civ. P. 39(b).

CUTSA was enacted in 1984 "to provide unitary definitions of trade secret and trade secret misappropriation, and a single statute of limitations for the various property, quasi-contractual, and violation of fiduciary relationship theories of noncontractual liability utilized at common law." American Credit Indem. Co. v. Sacks, 213 Cal. App. 3d 622, 630 (1989) (internal quotation marks omitted). CUTSA defines a trade secret as follows:

> [I]nformation, including a formula, pattern, compilation, program, device, method, technique, or process, that:
>
> (1) Derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use; and
>
> (2) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Cal. Civ. Code § 3426.1.

"CUTSA preempts common law claims that are based on misappropriation of a trade secret." Phoenix Techs. Ltd. v. DeviceVM, 2009 WL 4723400 (N.D. Cal. Dec. 8, 2009). However, CUTSA explicitly does not preempt "(1) contractual remedies, whether or not based upon misappropriation of a trade secret, (2) other civil remedies that are not based upon misappropriation of a trade secret, or (3) criminal remedies, whether or not based upon misappropriation of a trade secret." Cal. Civ. Code § 3426.7(b).

Thus, whether a non-contractual civil remedy is preempted by CUTSA depends on whether that claim is based upon misappropriation of a trade secret. A claim is preempted by CUTSA if it is "based on the identical nucleus of facts as a trade secrets misappropriation claim . . . ." Phoenix Techs., 2009 WL 4723400, at *4 (internal quotation marks and citation omitted). "If there is no material distinction" between the operative facts supporting a CUTSA claim and those alleged in a different claim, "CUTSA preempts the other claim." Id. (internal quotation marks and citation omitted).

CUTSA preemption is a fact-dependent inquiry. Consequently, courts have declined to find CUTSA preemption at the pleading stage where the nucleus of facts were not necessarily identical. For example, in First Advantage Background Servs. Corp. v. Private Eyes, Inc., 569 F. Supp. 2d 929, 942 (N.D. Cal. 2008), addressing a motion to dismiss tort claims based on CUTSA preemption, the court concluded that the claims would be preempted if the alleged confidential information upon which the claims were based turned out to be trade secrets. But the court declined to dismiss the claims at the pleading stage, because, to the extent that the claims were based on confidential information that did not constitute trade secrets, the claims were proper and not preempted by CUTSA. Id. at 942.

Similarly, in Phoenix Techs., the plaintiff brought tort and UCL claims based on the defendants' diversion or wrongful use of the plaintiff's "Proprietary Information." 2009 WL 4723400, at *5. The agreement between the parties had defined "Proprietary Information" as "'the business, products, supplier, customers, research or development of Phoenix and its products," which "includes, but is not limited to Innovations, marketing plans, product plans,

business, strategies, financial information, forecasts, personnel information, customer lists and other nonpublic technical or business information" that the defendant knew or had reason to know would be confidential. Id. Because the trade secrets claim only rested on information properly defined as trade secrets, and did not necessarily encompass the entire category of "Proprietary Information," the court concluded that the allegations in the tort and UCL claims were not based on the same nucleus of operative facts as the trade secrets claim. Id. Although preemption seemed likely because most of the allegations supporting the tort and UCL claims concerned the alleged misuse of information that appeared to fall within the definition of a trade secret, at the motion to dismiss stage, the court "construe[d] those claims as based on those facts that are not part of the nexus that forms the basis for [the] CUTSA claim." Id. The court noted that, "[i]f, following discovery, there is not sufficient evidence to support these claims based on a distinct nexus of facts, Defendants may move for summary judgment at that time." Id.

In accordance with the above analyses, Plaintiff's claims will be allowed to go forward to the extent that they do not rest on the misappropriation of trade secrets. Plaintiff's CUTSA claim alleges that Defendant misappropriated, among other things, "Beaulieu's financial information, customer lists, customer orders, pricing, customer preferences, and personnel information" that "constitute[] trade secrets." (FAC 54-55.) Plaintiff argues that its tort claims, by contrast, are premised on Defendant's disruption of Plaintiff's relationships with its customers and business opportunities. (Pl.'s Opp'n at 7.) Defendant allegedly disrupted Plaintiff's business by using "his knowledge and understanding of Beaulieu's business, and his knowledge of and relationships with Beaulieu's salespersons," to divert salespersons and key customer relationships from Beaulieu to Mohawk. (FAC ¶ 36.)

The second cause of action, a claim for unfair competition, alleges that Defendant violated the Cal. Bus. and Prof. Code § 17200 when he "misappropriate[ed] and us[ed] Beaulieu's confidential and proprietary information and/or trade secrets, interfering with Beaulieu's economic relationships and prospective economic advantage, and breach[ed] the Agreement and the implied covenants of good faith and fair dealing." (FAC ¶ 61.) Further, Plaintiff alleges that Defendant violated § 17200 by "directly or indirectly diverting Beaulieu's relationship with its employees and customers to Mohawk, as described above." (FAC ¶ 62.)

To the extent that Plaintiff's claim for unfair competition rests on the misappropriation of trade secrets, it is clearly preempted by CUTSA. However, to the extent that it rests on the misappropriation of other confidential and proprietary information that does not constitute trade secrets, [2] or on activities separate and distinct from the misappropriation of trade secrets, it will not be preempted. See, e.g., Snelling Servs., 2013 Cal. App. Unpub. LEXIS 5425, *56 (July 30, 2013) (declining to find preemption where it was "possible that the trier of fact will ultimately determine that some or all of the information alleged to have been misappropriated did not constitute trade secrets, but that the solicitation of [plaintiff's] employees using confidential salary information for the purpose of luring away [plaintiff's] customers constituted unfair competition").

---

[2] Additionally, to the extent that this claim relies on the breach of Paragraph 10 of the Agreement, it will fail as the Court has already ruled Paragraph 10 is void an unenforceable. (Doc. No. 42.)

Similarly, Plaintiff's third and fourth causes of action for intentional and tortious interference with economic relationship and prospective economic advantage are not preempted to the extent that these claims rely on Defendant's use of information other than trade secrets. "Plaintiff's unfair competition and tortious interference claims are not preempted by the [C]UTSA to the extent that they depend on the misappropriation of otherwise confidential or proprietary, but not trade secret, information as well as upon knowledge of Plaintiff's prospective business relationships." Leatt Corp. v. Innovative Safety Tech., LLC, 2010 WL 2803947, at *6 n.5 (S.D. Cal. July 15, 2010). Plaintiff alleges that, "separate and apart from the misappropriation of confidential and proprietary information and trade secrets," Defendant engaged in activities "designed to interfere with or disrupt" Plaintiff's business relationships by using Defendant's knowledge of Plaintiff's business relationships to "divert such relationships from Beaulieu to Mohawk." (FAC ¶¶ 68-71.) Again, while there may be some overlap once the facts are known, Plaintiff's claims for intentional and tortious interference with prospective economic advantage need not share an identical nucleus of facts with Plaintiff's CUTSA claim.

In sum, while Plaintiff's tort claims are to some extent intertwined with its claims of misappropriation of trade secrets and may ultimately be preempted, the Court cannot determine prior to discovery that they are preempted as a matter of law.

## 2. Breach of the Implied Covenant of Good Faith and Fair Dealing

Defendant next argues that Plaintiff's claim for breach of the implied covenant of good faith and fair dealing should be dismissed because it is duplicative of Plaintiff's breach of contract claim. A breach of the implied covenant of good faith and fair dealing involves something more than the breach of a contractual duty. Celador Int'l Ltd. v. Walt Disney Co., 347 F. Supp. 2d 846, 852 (C.D. Cal. 2004) (citing Careau & Co. v. Security Pacific Business Credit, Inc., 222 Cal. App. 3d 1371, 1394 (1990)). The claim centers on "unfair dealing, whether or not it also constitutes breach of a consensual contract term, prompted by a conscious and deliberate act that 'unfairly frustrates the agreed common purposes [of the contract] and disappoints the reasonable expectations of the other party.'" Id. (quoting Careau, 222 Cal. App. 3d at 1395). Thus, if "the allegations do not go beyond the statement of a mere contract breach and, relying on the same alleged acts, simply seek the same damages or other relief already claimed in a companion contract cause of action, they may be disregarded as superfluous as no additional claim is actually stated." Careau, 222 Cal. App. 3d at 1395.

However, the claim is not duplicative where (1) a breach of a consensual contract claim is not alleged; (2) the plaintiff seeks recovery in tort; or (3) the plaintiff alleges that the defendant acted in bad faith to frustrate the contract's benefits. Guz v. Bechtel Nat'l, Inc., 24 Cal. 4th 312, 353 n.18 (2000); see also Celador, 347 F. Supp. 2d at 852.

Plaintiff alleges that Defendant breached the contract by disclosing and utilizing Plaintiff's confidential and proprietary information for his own advantage and for the advantage of Mohawk, Plaintiff's direct competitor. (FAC ¶ 85.) Plaintiff also alleges that Defendant breached the Agreement by "directly or indirectly soliciting" various employees to leave Beaulieu to work for Mohawk. (FAC ¶¶ 86-98). Plaintiff alleges that these actions, as well as Defendant's solicitation of Beaulieu customers to take their business to Mohawk, violated the

covenant of good faith and fair dealing because Defendant intentionally and in bad faith deprived Plaintiff of the benefit of the Agreement. (FAC ¶¶ 100-104.)

Some of these actions may have constituted a breach of contract. If they did not, Plaintiff has alleged that these actions, "taken in bad faith, frustrated the actual benefits of the contract," Celador, 347 F. Supp. 2d at 853, which was to insulate Beaulieu from "conduct designed to harm or compete lawfully with Beaulieu," (FAC ¶ 101). Therefore, even though they are based on the same factual allegations, the breach of contract claim and the breach of the implied covenant of good faith and fair dealing claim are not duplicative because Plaintiff may be successful on one but not the other.

Moreover, the allegations that Defendant solicited Beaulieu's employees to leave the company and work for Mohawk can no longer support a breach of contract claim to the extent that such a claim is predicated on Paragraph 10 of the Agreement, which this Court held is void and unenforceable in its entirety. That ruling, however, does not prohibit Plaintiff from claiming that Defendant's solicitation of Plaintiff's employees constituted unfair dealing that had the effect of frustrating Plaintiff's benefit of the contract. If these allegations are no longer viable under a claim of breach of contract, which seems likely unless Plaintiff can point to another contractual provision to support them, they are necessarily not duplicative under a claim of breach of the covenant of good faith and fair dealing.

Accordingly, because it is premature to determine CUTSA preemption given the allegations in the FAC which may or may not result in preemption following discovery, and because Plaintiff's cause of action under the implied covenant of good faith and fair dealing is not superfluous, Defendant's Motion for Judgment on the Pleadings is DENIED.

### III. CONCLUSION

For the reasons stated above, the Court DENIES Plaintiff's Motion for Leave to Amend the First Amended Complaint (Doc. No. 29) and DENIES Defendant's Motion for Judgment on the Pleadings (Doc. No. 28). The November 30, 2015 hearing on the motions is VACATED.

**IT IS SO ORDERED.**